IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| DEBORAH SASS, ) | |
| ) | Case No. 09 B 11912 |
| Debtor. ) | |
| ) | |
| ) | |
| SWIFT FINANCIAL/M & I BANK, FSB, ) | Hon. Susan Pierson Sonderby |
| ) | |
| Plaintiff, ) | Adv. No. 09 A 00612 |
| v. ) | |
| ) | |
| DEBORAH SASS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter comes before the court on Debtor/Defendant's motion to dismiss the amended adversary complaint (the "Complaint") filed by Plaintiff, Swift Financial/M & I Bank FSB (the "Bank"). For the reasons set forth below, the motion will be granted.

In its Complaint, the Bank alleges that Debtor is or was the owner of a business named Sanctorum Corp. and that on or about March 18, 2008, Debtor telephonically applied for and obtained an unsecured line of credit from the Bank for Sanctorum Corp., as borrower, with a maximum credit limit of $17,500.00. The Bank further alleges that the loan is evidenced by a certain

Line of Credit Agreement, a copy of which is attached to the Complaint as Exhibit 1, which provides that its terms are ratified upon the borrower writing a check to activate the line of credit. According to the Bank, Debtor activated the line of credit.

The Bank alleges that in accordance with Debtor's request, the Bank wire transferred the sum of $17,000.00 to the account of Sanctorum Corp. A copy of an account statement showing such a wire transfer on March 19, 2008 is attached to and made a part of the Complaint as Exhibit 3. The Bank further alleges that pursuant to the terms of the line of credit agreement, Debtor is jointly and individually liable for all obligations arising out of the loan transaction.

The loan was originated by telephone on March 18, 2008, and a copy of the summary of the telephonic loan application is attached to and made a part of the Complaint as Exhibit 2 (the "Loan Application Summary"). The Bank alleges that as part of the telephonic application process, Debtor represented that she earned $8,333.00 monthly.

According to the Bank, Debtor's Statement of Financial Affairs filed in her bankruptcy case shows that she received no personal income for the years 2007 or 2008. The Bank alleges upon information and belief that in order to induce it to approve the loan, Debtor intentionally made verbal representations to the Bank during the telephonic loan application process that overstated and misrepresented the Debtor's personal income. The Bank asserts that it reasonably and justifiably relied upon such representations in approving the loan and that but for such misrepresentations, it would not have approved the loan.

Debtor filed her Chapter 7 petition on April 3, 2009. The Bank alleges that as of the date Debtor filed her petition, only three payments had been made on the loan, and the outstanding balance was $21,426.15, including accrued interest. According to the Bank, it has suffered

damages as a result of Debtor's fraudulent actions in the amount of $21,426.15. The Bank seeks a judgment in that amount as well as a declaration that the debt is nondischargeable under §523(a)(2)(A) of the Bankruptcy Code as one for money obtained by false pretenses, false representations, and actual fraud.

Debtor moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), applicable herein by virtue of Bankruptcy Rule 7012, because the only false representation alleged in the Complaint is that Debtor overstated her personal income during the loan application process. According to Debtor, such a representation constitutes a statement respecting the Debtor's financial condition, and by the express terms of § 523(a)(2)(A), such a statement cannot give rise to a finding of nondischargeability thereunder. Debtor also contends that the Complaint should be dismissed because it does not allege facts sufficient for the court to plausibly infer justifiable reliance on the misrepresentation, as required for a cause of action under § 523(a)(2)(A). Debtor asserts, in this regard, that justifiable reliance can only be established if the alleged misrepresentation was material, and since Debtor drew all of her income from Sanctorum Corp. - - the alleged co-obligor on the Bank's loan - - the amount of her salary could not have been material to the loan-making decision.  The Bank counters that it "actually relied" on the amount of Debtor's income, claiming that it was "essential to the loan approval." As for the exclusion from § 523(a)(2)(A) for statements respecting financial condition, the Bank urges the court to adopt a more restrictive interpretation of that provision and find that a statement concerning only one aspect of the Debtor's financial situation does not amount to such a statement.

**Discussion.**

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157, referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. §1409. This proceeding involves a determination of dischargability of a debt and is therefore a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

On a motion to dismiss made pursuant to Rule 12(b)(6), all of the well-pleaded facts alleged in the complaint are accepted as true for purposes of the motion and all possible inferences are drawn in the plaintiff's favor. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

A written instrument that is an exhibit to the complaint is a part of the complaint for all purposes, Fed.R.Civ.P. 10(c) (applicable by virtue of Fed.R.Bankr.P. 7010), and a contradictory attachment prevails over the allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002). "'The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.'" *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (*quoting* 5 Wright & Miller, Federal Practice & Procedure: Civil 2d, § 1327 at 766 (1990)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). As noted by the Seventh Circuit in *E.E.O.C. v. Concentra Health Services, Inc.*, 496

F.3d 773 (7th Cir. 2007), the Supreme Court "has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests.' ... Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Id.* at 776 (citing *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65, 1973 n.14 (2007)). While the complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic,* 127 S.Ct. at 1964-65. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atlantic*).

Where fraud is alleged, a more rigorous pleading standard comes into play. Rule 9(b) provides, *inter alia,* that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under this standard, a plaintiff must state the "who, what, when, and where" of the alleged fraud. *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir. 1992). The particularity requirement of Rule 9(b) applies equally to all claims which are based upon an underlying fraud, including fraud claims under §523(a)(2)(A). *See, e.g., In re Lane,* 937 F.2d 694, 698 (1st Cir. 1991).

Section 523(a) provides in relevant part as follows:

**(a)** A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--

...

**(2)** for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

**(A)** false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

**(B)** use of a statement in writing--

**(i)** that is materially false;

**(ii)** respecting the debtor's or an insider's financial condition;

**(iii)** on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

**(iv)** that the debtor caused to be made or published with intent to deceive ... .

Subsections (a)(2)(A) and (a)(2)(B) are mutually exclusive. *In re Holstein*, 272 B.R. 463, 480 (Bankr. N.D.Ill. 2001) (citing, *inter alia*, 124 Cong.Rec. H11095-96 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978)). Subsection (a)(2)(B) governs the dischargeability of debts arising through use of a statement "respecting ... financial condition." A claim of nondischargeability for such a debt cannot be made under subsection (a)(2)(A), as it specifically excludes such debts from its operation. Under subsection (a)(2)(B), the statement respecting financial condition must be in writing in order to be actionable. Debts arising from false oral statements respecting financial condition remain dischargeable. *See, e.g., In re Bogdanovich*, 292 F.3d 104, 111 (2d Cir. 2002).

Here, the statements were verbal - - made by Debtor during the telephonic loan application process. The Bank, recognizing the exclusion in subsection (a)(2)(A), asserts that "[t]he issue then becomes whether or not the false statement as to defendant's income is equivalent to a statement respecting her financial condition." Response Memorandum, at 3. Again, the Bank contends that it is not, urging the court to adopt a more restrictive view of the the phrase "statement respecting ... financial condition."

-6-

The Second Circuit has noted that while courts generally agree that statements "respecting ... financial condition" are not limited to formal financial statements, they are sharply split as to whether that phrase should be given a broad or a narrow interpretation. *In re Bogdanovich*, 292 F.3d 104, 112-113 (2d Cir. 2002) (collecting cases). In *Bogdanovich*, the Second Circuit did not take a position on the issue because it found that considerations of justiciability prevented it from determining the actionability of the statements made in that case.

The Fourth Circuit adopted the broad approach in *Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060 (4th Cir. 1984). There, an individual had loaned the debtor $5,500 and obtained in exchange a security interest in the debtor's livestock and farm implements. The debtor assured the creditor orally throughout the loan negotiations that he would have a first priority security interest in the debtor's livestock and farm implements, even though the debtor knew that other creditors already had superior liens. *Id.* at 1060. The bankruptcy court held that the debtor's oral misrepresentations that the property was free and clear constituted statements relating to his financial condition within the purview of §523(a)(2)(B). In a brief opinion, the Fourth Circuit affirmed, explaining:

> A debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition. Indeed, whether his assets are encumbered may be the most significant information about his financial condition. Consequently, the statement must be in writing to bar the debtor's discharge.

*Id.* at 1061 (citations omitted).

Courts espousing the more restrictive view generally reject the notion that a statement concerning the condition or quality of a single asset or liability impacting on the debtor's financial picture constitutes a statement "respecting ... financial condition" within the meaning of

the statute. *See, e.g., In re Alicea*, 230 B.R. 492, 502-504 (Bankr. S.D.N.Y. 1999). Such courts limit actionable statements to "financial-type statements" that demonstrate the debtor's net worth, overall financial health, or ability to generate income. *See, e.g., In re Chivers*, 275 B.R. 606, 615 (Bankr. D.Utah 2002).

The Tenth Circuit, in *In re Joelson*, 427 F.3d 700 (10th Cir. 2005), adopted the strict approach, quoting extensively from *Chivers*, as follows:

> Cases supporting this view generally recite four arguments. First, they argue that the normal commercial meaning and usage of " 'statement' in connection with 'financial condition' denotes either a representation of a person's [an entity's] overall 'net worth' or a person's [an entity's] overall ability to generate income." Second, they cite to legislative history that references the statutes' application to the " 'so-called false financial statement.' " Third, they argue that the strict interpretation promotes better bankruptcy policy, because narrowing the definition of financial condition in § 523(a)(2)(B) necessarily expands those statements, both written and oral, that do not relate to financial condition that fall within §523(a)(2)(A) and better harmonizes the statute. Finally, they argue that a strict interpretation is consistent with the historical basis of § 523(a)(2)(B), which was designed to protect debtors from abusive lending practices.
> 
> ...
> 
> [T]he strongest argument in favor of the broad interpretation-that had Congress wanted § 523(a)(2)(B) limited to false financial statements, it would have so drafted the statute-is gutted by the Supreme Court's repeated statements in *Field v. Mans* that § 523(a)(2)(B) refers to false financial statements. ... *Field's* recitation of the history of § 523(a)(2)(B) and its goal of preventing abuse by consumer finance companies, which sometimes have encouraged false financial statements by their borrowers for the purpose of insulating their own claims from discharge, lends strong support for adoption of the strict interpretation.

*Joelson*, 427 F.3d at 712 (quoting from *Chivers*, 275 B.R. at 615).

While this court believes that the more restrictive interpretation adopted by the Tenth Circuit and the other cases cited above appears to be the correct approach, the court need not make that determination in this case because even under the strict approach, the statements made by Debtor were clearly "respecting [her] ... financial condition." Debtor's statements were made

as part of a telephonic loan application process, and they included not only the amount of her monthly salary, but also the amount of the monthly mortgage payment on her home. The "Comments" section of the Loan Application Summary further indicated that the current market value of her home was $340,000 and that there were no second mortgages or home equity lines of credit.[1] The summary also stated that a credit bureau report "shall be requested." Given the types of information contained in the Loan Application Summary and the context in which given, it qualifies as a statement "respecting ... financial condition" even under the strict view of that phrase. *See also In re Sallie*, 2009 WL 1917959 at *5 (July 1, 2009 Bankr. E.D.Tenn) (unpublished) (statements regarding amount of individual's income are statements respecting financial condition, even under strict interpretation); *In re Sharp*, 357 B.R. 760, 765 (Bankr.N.D.Ohio 2007) (loan application containing detailed information about sources of debtor's income constituted statement respecting financial condition); *Am. Nat'l Bank v. Dalcourt (In re Dalcourt),* 354 B.R. 868, 874 (Bankr.N.D.Iowa 2006) (credit application containing figure for debtor's gross monthly salary constituted statement of her ability to generate income and, coupled with credit bureau report, provided overall view of her ability to pay debt); *MBNA Consumer Services, Inc. v. Jackson (In re Jackson),* 252 B.R. 877, 878 (Bankr.W.D.N.Y.2000) (representation concerning individual debtor's annual income was statement respecting his financial condition, as "[i]nherently, income is a critical aspect of a debtor's financial condition"); *Phillips v. Napier (In re Napier),* 205 B.R. 900, 905 (Bankr.N.D.Ill.1997) (rental application containing statements about debtor's employment, weekly gross earnings, and additional income constituted statement respecting financial

---

[1] The "Comments" section states, *inter alia*, "cmv on home - 340k, no helocs or 2nds."

condition).

Debtor also contends that the Bank has failed to state a plausible claim with respect to the reliance requirement of a § 523(a)(2)(A) cause of action. Debtor asserts that in order to satisfy the reliance requirement, the Bank must show a material misrepresentation that was the cause-in-fact of the debt. Reply, at 6-7 (citing *In re Hanson*, 428 B.R. 475, 488 (Bankr. N.D.Ill. 2010)). Since it is the Bank's position that both Debtor and Sanctorum were liable on the loan, Debtor urges that the size of her salary drawn from Sanctorum was immaterial.

The Bank counters that all it has to prove is *actual* reliance. That is not, however, the law; the Supreme Court held in *Field v. Mans*, 516 U.S. 59 (1995), that a creditor must demonstrate *justifiable* reliance in order to establish an exception to discharge under §523(a)(2)(A). Here, the Bank simply asserts that the amount of Debtor's income was crucial to its loan-making decision.

In any event, since the court has found that Debtor's statements were in fact statements "respecting ... [her] financial condition" and therefore not actionable because not in writing, the court need not decide whether the Complaint's allegations also fail to clear the plausibility hurdle with respect to the Bank's reliance on those statements.

## CONCLUSION

For all of the reasons set forth above, Debtor's motion to dismiss will be granted, and the Bank's complaint will be dismissed. A separate order will be entered.

Dated: December 29, 2010

ENTER:

Susan Pierson Sonderby
United States Bankruptcy Judge